McCULLOUGH, Judge.
Plaintiff Tammy L. Hepler, individually and as the administratix of the estate of her husband, John A. Hepler, III, appeals from an order sanctioning her for discovery violations and requiring her to provide information and produce documents. We affirm.
FACTS
On 20 May 2000, a pedestrian walkway collapsed at the Lowe's Motor Speedway (hereinafter "the Speedway")[1] in Concord, North Carolina, causing injuries to several people who were using the walkway to leave a NASCAR event. Defendant Tindall Corporation (hereinafter "Tindall") had been involved in constructing the collapsed walkway.
As a result of the walkway collapse, approximately 100 people filed actions against, inter alia, the Speedway and Tindall (hereinafter "defendants"). The present plaintiff, Tammy L. Hepler (hereinafter "Tammy Hepler" or "Mrs. Hepler") filed an action for her own injuries and also filed an action as the administratrix of the estate of her late husband, John A. Hepler, III, (hereinafter "Drew Hepler" or "Mr. Hepler"). The complaint alleged that Mr. Hepler's fall from the walkway caused injury to his right ankle and foot, which required surgery, and that he died as a result of multiple drug toxicity from the medications prescribed and taken for the injuries sustained in the walkway collapse. The complaint further alleged that Mrs. Hepler suffered injuries to her neck, shoulders, and lower back as a result of the injury. It was also alleged that both of the Heplers experienced lost wages and economic loss.
The Honorable Chief Justice of the North Carolina Supreme Court designated each case related to the walkway collapse an "exceptional" case pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and each case was assigned to be heard by Superior Court Judge W. Erwin Spainhour. As such, the Hepler suits were designated "exceptional" and assigned to Judge Spainhour.
In early 2003, the first pedestrian walkway case was tried. In that case, the jury found that the Speedway and Tindall were liable. Judge Spainhour ruled that the issue of liability had been established by collateral estoppel with respect to the remaining plaintiffs. Thus, the Hepler lawsuits required only a trial to determine damages.
On 23 March 2004, defendant Tindall filed a motion for sanctions and to compel the production of certain items (hereinafter "Tindall's motion"). A hearing on this motion was held on 1 April 2004. During this hearing, Judge Spainhour orally announced his rulings. These rulings were reduced to writing, and a written order was signed by Judge Spainhour on 19 April 2004 and filed on 22 April 2004 (hereinafter "the 22 April 2004 order").
Tindall's motion addressed alleged violations of the North Carolina Rules of Civil Procedure and Case Management Orders (CMOs), which Judge Spainhour had entered to govern the voluminous discovery involved in all of the pedestrian walkway litigation. CMO No. 1, entered 20 September 2001, provided, inter alia, that
[t]he identification of all expert witnesses shall include the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each such opinion as provided in Rule 26 of the North Carolina Rules of Civil Procedure.
On or before March 15, 2002, all parties shall identify all expert witnesses who shall be called to testify at the trial of the particular Plaintiff(s)' case....
*800 Any expert witness not identified in accordance with the terms and conditions [of] this [CMO] shall not be permitted to testify at trial absent a showing of good cause.
CMO No. 2, entered 13 March 2002, slightly revised the identification requirements and provided that "[t]he identification of all expert witnesses on or before March 15, 2002 shall be limited to the name, business affiliation and address of each expert. On or before March 29, 2002, all parties shall provide the remaining identification of all expert witnesses as defined in ... [CMO] No. 1." CMO No. 5, entered 30 October 2002, required all plaintiffs in the pedestrian walkway litigation to provide supplemental responses to interrogatories and requests for production of documents and to certify that a complete and updated set of, inter alia, medical records had been provided to defendants. CMO No. 6, entered 16 May 2003, again required all plaintiffs to "provide defense counsel with updated medical reports, medical bills, [and] expert witness reports" and mandated that plaintiffs notify defense counsel if such information had already been provided.
Specifically, Tindall's motion and Judge Spainhour's 22 April 2004 order addressed the following topics:
i. Requests for Admissions Concerning an Autopsy Performed on Mr. Hepler
An autopsy performed on Mr. Hepler revealed the presence of certain drugs in his system. Defense attorneys sought to determine whether these findings would be contested and whether the drugs found in his system had been prescribed for Mr. Hepler in the recent past. Therefore, the following requests for admissions were served upon Mrs. Hepler:
2. The results shown in the toxicology section of the Autopsy Report ... accurately report the levels of acetaminophen, alprazolam, hydrocodone, norpropoxyphene, and propoxyphene which existed in Drew Hepler's blood and liver at the time of [his] death.
* * * *
3. The propoxyphene and norpropoxyphene shown by the Autopsy Report as found in Drew Hepler's blood and liver did not result from any medication prescribed for [him] during the six-month period prior to his death.
* * * *
4. No physician or other medical care provider prescribed any medicines for Drew Hepler containing propoxyphene ... during the six month period prior to his death.
* * * *
5. No physician or other medical care provider prescribed Darvocet or Darvon for Drew Hepler during the six-month period prior to his death.
(hereinafter "the RFAs" or "RFAs Nos. 2-5"). On 13 March 2002, Mrs. Hepler responded that she could not admit or deny any of the foregoing items because she was "not educated nor qualified to interpret the findings of [the medical examiner]" and "lack[ed] knowledge concerning medicine and the effect of medications prescribed to and taken by Drew Hepler during the six-month period prior to his death." Further, she stated that she had "made reasonable inquiry and the information known or readily obtainable to her [was] insufficient to enable her to admit or deny th[e] [RFAs] for the reason that she lack[ed] knowledge concerning medicine and the formulation, preparation, and interpretation of autopsy reports...." On 11 December 2003, well after the parties were required to be aware of the substance of their experts' opinions pursuant to CMOs Nos. 1 and 2, Mrs. Hepler's attorney indicated that these responses remained full and complete responses.
In its motion, Tindall sought sanctions for the failure of Mrs. Hepler to consult with her experts before responding to RFAs Nos. 2-5. Specifically, Tindall requested that the Court "strike [the] non-responses ... and ... deem [RFAs Nos. 2-5] to be admitted." In his 22 April 2004 order, Judge Spainhour determined that
Tammy Hepler, by her response to Requests for Admissions Nos. 2, 3, 4, and 5, either has no expert witness qualified to testify about such matters or else, if she does have such experts, she failed to make reasonable inquiry of them. In either *801 event, Plaintiff through her responses to those requests has prejudiced Defendants in their defense of Plaintiff's claims....
As a sanction, Mrs. Hepler was prohibited from contradicting the subject matter in RFAs Nos. 2-5 at trial.
ii. Mrs. Hepler's Late Identification of Dr. Joseph Bederka as an Expert Witness
On 29 March 2002, Mrs. Hepler disclosed for the first time that she might call Dr. Joseph Bederka as an expert in the field of toxicology to provide testimony as to the cause of Mr. Hepler's death. Pursuant to CMOs Nos. 1 and 2, all parties were required to disclose the name, business affiliation, and address of all of their expert witnesses by 15 March 2002 and were required to disclose the substance of the facts and opinions to which the experts were expected to testify and a summary of the grounds for the experts' opinions by 29 March 2002. Judge Spainhour had consistently enforced the deadlines in CMOs Nos. 1 and 2, and had previously excluded a defense witness for the failure to meet the 15 March 2002 deadline.
Tindall sought to have Dr. Bederka's testimony excluded based upon his late identification. At the 1 April 2004 hearing on this issue, Mrs. Hepler's attorney asserted that the failure to disclose Dr. Bederka's name, business affiliation, and address on 15 March 2002 was the result of a "clerical error" and was inadvertent. Judge Spainhour indicated that he did not attribute any ill will to the nondisclosure, but noted that he felt obligated "to be as fair as [he could]" and to treat everybody the same. In his 22 April 2004 order, Judge Spainhour ruled that
Tammy Hepler failed to timely identify Dr. Joseph Bederka in accordance with the deadline established by the Case Management Orders for the identification of all expert witnesses and, as with other expert witnesses identified late by other parties, Dr. Bederka therefore should not, and he will not, be permitted to testify.
Further, Judge Spainhour ruled that no other witnesses would be permitted to refer to any opinions held by Dr. Bederka.
iii. Incomplete Discovery Concerning Mrs. Hepler's Previous Back Injuries
Defense interrogatories served in August of 2001 requested that Mrs. Hepler identify the names and addresses of all health care providers who examined or treated her, as well as any accidents, injuries, medical conditions, or illnesses she experienced, during the ten years preceding the pedestrian walkway collapse. A corresponding request for production of documents sought "[a]ll medical records ... relating to every illness or injury identified ... in [the] answers to [i]nterrogatories...."
Mrs. Hepler's answers indicated that she suffered a herniated disc in 1994, for which she received treatment from Dr. F. Gary Gieseke in Florida, and that she underwent back surgery in 1995. In a 21 November 2003 letter, defense counsel requested additional information about Dr. Gieseke's examination and treatment of Mrs. Hepler. Specifically, the letter noted that the defense had received hospital records pertaining to the back surgery, but lacked records of other treatment provided by Dr. Gieseke. Prompt production of such additional records was requested. Mrs. Hepler's attorney responded on 11 December 2003 by indicating that Mrs. Hepler had requested the information and documents pertaining to her treatment by Dr. Gieseke and that she would supplement the discovery requests when the information was provided. Dr. Gieseke's office had a policy of keeping records for only seven years; therefore, records relating to Dr. Gieseke's treatment of Mrs. Hepler in 1995 were no longer available when Mrs. Hepler requested them. An MRI taken of Mrs. Hepler's back was among the documents that could no longer be produced.
Mrs. Hepler also failed to produce chiropractic records relating to treatment of a pinched nerve in her lower spine during the 1990's, and failed to produce records relating to treatment for back pain in 1994, including records arising from her admission to a hospital on 5 July 1994.
Tindall sought to have Mrs. Hepler precluded from introducing any evidence tending to show that the back injuries referenced in her complaint were the result of the pedestrian *802 walkway failure. Judge Spainhour found that
[t]he medical records that are missing, destroyed, or have not been produced from Dr. Gieseke and other providers who treated [Mrs. Hepler] for her history of back problems, particularly the MRI, were relevant to the defense of [her] claims relating to her back[,] and such records should have been produced when first requested by Defendants in 2001.[Her] failure to obtain and produce such records requires that an appropriate remedy or sanction be entered.
After considering other available remedies and sanctions, Judge Spainhour ruled that Mrs. Hepler would be precluded from presenting any testimony or offering any exhibits or documents "that state, imply or infer that any back injury or problem ... [was] caused or developed as a result of the pedestrian walkway failure."
iv. The Motion to Compel
Tindall also sought a court order compelling production of additional medical records concerning the Heplers. In particular, Tindall sought previous mental health records, which were alleged to be important in defending Mrs. Hepler's claim that she suffered emotional distress as a result of the pedestrian walkway collapse. At the 1 April 2004 hearing, Judge Spainhour orally instructed Mrs. Hepler's attorney to produce these records "[w]ithin 20 days" from the date of the hearing. In the order entered 22 April 2004, Judge Spainhour ruled that
Tammy Hepler has failed to identify all of her medical care providers and has failed to produce all of the medical records for herself ... which she was required to produce by the Rules of Civil Procedure and the Case Management Orders. [Her] failures to do so have prejudiced Defendants in their ability to prepare the defense of her claims ..., which are scheduled for trial beginning June 21, 2004.
The written order repeated Judge Spainhour's previous verbal order that "all such records should be produced and all identification should be made by [Mrs. Hepler] within 20 days of the date of the hearing on this matter."
From the order imposing sanctions and compelling production of medical records, Mrs. Hepler now appeals.
THE INTERLOCUTORY NATURE OF MRS. HEPLER'S APPEAL
The order from which Mrs. Hepler appeals is interlocutory. See Veazey v. Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (noting that an interlocutory order "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy"), reh'g denied, 232 N.C. 744, 59 S.E.2d 429-30 (1950). As a general rule, appeals from interlocutory orders will be dismissed by this Court unless the trial court has entered a certification pursuant to N.C. Gen.Stat. § 1A-1, Rule 54(b), or the appeal affects a substantial right. See N.C. Gen.Stat. § 1A-1, Rule 54(b) (2003) (making an interlocutory order immediately appealable when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal); N.C. Gen.Stat. § 1-277(a) (2003) (permitting an appeal from an interlocutory order "which affects a substantial right claimed in any action or proceeding").
Judge Spainhour's 22 April 2004 order performs two functions: it imposes sanctions for discovery violations, and it also requires Mrs. Hepler to comply with previous oral rulings and written orders governing discovery. Generally, discovery orders, including orders compelling production, are not immediately appealable. Sharpe v. Worland, 351 N.C. 159, 163, 522 S.E.2d 577, 579 (1999). However, "when [a discovery] order is enforced by sanctions pursuant to ... Rule 37(b), the order is appealable," Walker v. Liberty Mut. Ins. Co., 84 N.C.App. 552, 554, 353 S.E.2d 425, 426 (1987), and the appeal tests the validity of both the discovery order and the sanctions imposed, Benfield v. Benfield, 89 N.C.App. 415, 420, 366 S.E.2d 500, 503 (1988).
*803 In the instant case, Mrs. Hepler appeals from the sanctions imposed pursuant to discovery orders without contesting the validity of the underlying discovery orders themselves. Therefore, it is questionable whether she has any right to immediately appeal from the portion of the interlocutory order imposing sanctions. Further, she undoubtedly has no immediate right of appeal from the portion of the interlocutory order compelling production.
Rule 2 of the North Carolina Rules of Appellate Procedure permits this Court to suspend or vary the requirements of the Rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure provides that "[t]he writ of certiorari may be issued in appropriate circumstances by [an] appellate court to permit review ... when no right of appeal from an interlocutory order exists...." This Court has discretion under Rule 2 to "treat [a] purported appeal as a petition for writ of certiorari and address the merits [of the arguments presented to this Court]." Mack v. Moore, 91 N.C.App. 478, 480, 372 S.E.2d 314, 316 (1988), disc. review denied, 323 N.C. 704, 377 S.E.2d 225 (1989).
Given the number of parties, and trials, involved in the pedestrian walkway cases, the need for finality and certainty in this complex and "exceptional" litigation, and the likelihood that dismissing the present appeal would only delay this Court's ultimate review of the subject matter now at issue, we are persuaded that a disposition on the merits in the instant case would "expedite decision in the public interest." See N.C. R.App. P. 2 (2005). Accordingly, we exercise our authority under Rule 2 to consider Mrs. Hepler's appeal as a petition for certiorari, and we grant certiorari to review Judge Spainhour's 22 April 2004 order.
I.
In her first set of arguments, Mrs. Hepler contends that Judge Spainhour erred by excluding the testimony of her expert toxicologist, Dr. Bederka, and by precluding her from contradicting the subject matter contained in the requests for admissions concerning the drugs found in Mr. Hepler's body during an autopsy.
A.
We first address Mrs. Hepler's arguments concerning the exclusion of Dr. Bederka's testimony. These arguments lack merit.
"If a party ... fails to obey an order to provide or permit discovery... the court in which the action is pending may make such orders in regard to the failure as are just, and among others... [a]n order ... prohibiting [the disobedient party] from introducing designated matters in evidence...." N.C. Gen.Stat. § 1A-1, Rule 37(b)(2)(b) (2003). The imposition of sanctions under Rule 37 "is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion." Bumgarner v. Reneau, 332 N.C. 624, 631, 422 S.E.2d 686, 690 (1992). An abuse of discretion may arise if there is no record evidence which indicates that defendant acted improperly, or if the law will not support the conclusion that a discovery violation has occurred. See Cloer v. Smith, 132 N.C.App. 569, 573, 512 S.E.2d 779, 782 (1999) (discussing a trial court's findings with respect to discovery violations and holding that "the deposition transcript supports the trial court's findings that counsel for [one of the parties] refused to allow [the party] to answer some questions, and, in other instances, `told [the party] what to say'"); King v. Koucouliotes, 108 N.C.App. 751, 754, 425 S.E.2d 462, 464 (conducting a legal analysis to determine "whether ... trial witnesses and trial exhibits are discoverable"), disc. review improvidently allowed, 335 N.C. 164, 436 S.E.2d 132 (1993). Further, "[t]he choice of sanctions under Rule 37 is within the trial court's discretion" and is reviewable only for an abuse of discretion. Brooks v. Giesey, 106 N.C.App. 586, 592, 418 S.E.2d 236, 239 (1992), aff'd, 334 N.C. 303, 432 S.E.2d 339 (1993).
1.
Mrs. Hepler contends that Judge Spainhour was compelled to find that she had shown good cause for allowing Dr. Bederka *804 to testify despite his late identification as an expert witness. As already indicated, CMOs Nos. 1 and 2 required a brief identification of all experts to occur on 15 March 2002 and more detailed information on each identified expert to be provided on 29 March 2002. CMO No. 1 further provided that "[a]ny expert witness not identified in accordance with the[se] terms and conditions ... shall not be permitted to testify at trial absent a showing of good cause." Mrs. Hepler admits that she did not provide any information concerning Dr. Bederka on the 15 March deadline. However, she insists that the failure was due to inadvertence on her attorney's part, that she ultimately identified Dr. Bederka on the 29 March deadline, and that his eventual disclosure, although untimely, still occurred more than two years prior to the trial of the case in which Dr. Bederka was supposed to testify. It follows, Mrs. Hepler insists, that there was necessarily good cause to allow Dr. Bederka to testify notwithstanding her technical failure to abide by the CMOs.
However, the record is replete with information which reveals the importance of the deadlines in each of the pedestrian walkway cases and with admonitions by Judge Spainhour that the parties should strictly and completely comply with rules and orders governing discovery. On the facts of this case, we are unpersuaded that Judge Spainhour was compelled to find that there was good cause to permit Dr. Bederka to testify, and we discern no abuse of discretion in the decision to exclude Dr. Bederka's testimony.
2.
Mrs. Hepler further argues that, even if she did not make a showing of good cause, defendants waived their right to object to the late designation of Dr. Bederka. "Waiver `is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage, or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been intentionally given up.'" Patterson v. Patterson, 137 N.C.App. 653, 667, 529 S.E.2d 484, 492 (citation omitted), disc. review denied, 352 N.C. 591, 544 S.E.2d 783-84 (2000).
Mrs. Hepler notes that Tindall waited approximately two years after the late identification before bringing its motion to exclude Dr. Bederka's testimony. However, it also appears from the record that defendants did not schedule a deposition for Dr. Bederka and did not otherwise proceed with discovery concerning the testimony he would offer if called as a witness. Thus, assuming arguendo that a waiver analysis is appropriate, we are unpersuaded that the facts of the instant case compelled a finding of waiver.
3.
Mrs. Hepler also contends that Judge Spainhour was compelled to find that defendants were equitably estopped from seeking sanctions for the late identification of Dr. Bederka. Our review of the record reveals that Mrs. Hepler did not make an equitable estoppel argument before Judge Spainhour. Therefore, she has waived appellate review of this issue. See N.C. R.App. P. 10(b)(1) (2005) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make...."); Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust., 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) ("[I]ssues and theories of a case not raised below will not be considered on appeal[.]").
B.
We next address Mrs. Hepler's argument that Judge Spainhour erred by deeming defense RFAs Nos. 2-5 admitted and precluding her from presenting contradictory evidence. This argument lacks merit.
N.C. Gen.Stat. § 1A-1, Rule 36 (2003) provides as follows:
(a) Request for admission. - A party may serve upon any other party a written request for the admission ... of the truth of any matters within the scope of [N.C. Gen.Stat. § 1A-1] Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact....
*805 The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter.... The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny.
... The party who has requested the admissions may move to determine the sufficiency of the answers or objections.... If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.
(b) Effect of admission. - Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.
(Emphasis added.)
In the instant case, Mrs. Hepler declined to admit or deny the subject matter of RFAs Nos. 2-5 on the ground that she lacked the necessary expertise. Furthermore, although supplementation of these responses was required, she continued to assert that she could not admit or deny the subject matter of the RFAs long after she was required to report the subject matter of all of her experts' opinions. Therefore, Judge Spainhour could permissibly find that Mrs. Hepler either did not make reasonable inquiry of her experts or that, if she had made such inquiry, she was not in a position to contradict the information contained in the RFAs and should have admitted them. Thus, Judge Spainhour did not err by concluding that Mrs. Hepler had not complied with the dictates of Rule 36(a).
Further, Rule 36 provides that a trial court "may" order that a matter be deemed admitted upon determining that a response to a request for admission is noncompliant; therefore, trial courts are vested with the discretion to impose this sanction. See Whitley v. Coltrane, 65 N.C.App. 679, 681, 309 S.E.2d 712, 715 (1983) (holding that use of the word "may" in subsection (b) of Rule 36 indicates that "the ruling ... [is] discretionary with the trial court"). Therefore, this Court's review of a trial court's decision to deem a matter admitted under Rule 36(a) is limited to determining whether the trial court abused its discretion. See id. Given the facts of the instant case, we discern no abuse of discretion in Judge Spainhour's decision to deem RFAs Nos. 2-5 admitted.
The corresponding assignments of error are overruled.
II.
Mrs. Hepler next argues that Judge Spainhour erred by precluding her from presenting evidence of her back injury at trial. This contention lacks merit.
As a sanction for failing to comply with a discovery order, a trial court may "refus[e] to allow the disobedient party to support or oppose designated claims or defenses, or prohibit[] him from introducing designated matters in evidence." N.C. Gen.Stat. § 1A-1, Rule 37(b)(2)(b). As already indicated, the decision to impose sanctions pursuant to Rule 37, and the choice of sanction, are consigned to the discretion of trial court. Ante, op. at 13, ___ N.C.App. at ___, 618 S.E.2d at 803.
In the instant case, Mrs. Hepler failed to produce records of her office visits with Dr. Gieseke, an MRI taken of her back, chiropractic records relating to treatment of a pinched nerve in her lower spine during the 1990's, and documents, including hospital records, relating to treatment for back pain in 1994. Mrs. Hepler asserts that she committed no discovery violations because some of these records had been destroyed by the *806 time she acted upon the realization that she had not produced them. In support of this position, Mrs. Hepler correctly notes that "if a party is unable to answer discovery requests because of circumstances beyond its control, an answer cannot be compelled." Atlantic Veneer Corp. v. Robbins, 133 N.C.App. 594, 598, 516 S.E.2d 169, 172 (1999). However, the record reveals, and Judge Spainhour found, that the now unavailable records would have been available if Mrs. Hepler had produced them when they were originally requested. Accordingly, Judge Spainhour did not err by concluding that Mrs. Hepler had committed a discovery violation. Furthermore, given that the absence of these documents potentially prejudiced the defendants' ability to dispute Mrs. Hepler's claim that the pedestrian walkway collapse caused her back injury, we are unpersuaded that Judge Spainhour abused his discretion by precluding Mrs. Hepler from presenting evidence of this claim at trial.
The corresponding assignments of error are overruled.
III.
In her final argument, Mrs. Hepler challenges portions of Judge Spainhour's 22 April 2002 order which require the production of documents and compliance with the Rules of Civil Procedure and the CMOs entered in the pedestrian walkway litigation. She contends that the order should be reversed because it requires the impossible. This contention lacks merit.
In Conclusion of Law No. 4, Judge Spainhour's written order states that production of certain records must occur "within 20 days of the date of the hearing on [Tindall's motion to compel]." Paragraph four of the decretal portion of the written order also provides that
[b]y April 21, 2004, Plaintiff shall identify all medical care providers and produce all the documents which Plaintiff was obligated to identify and produce in response to the Discovery Requests, the Rules of Civil Procedure and the Case Management Orders of th[e] Court ..., and also by April 21, 2004, Plaintiff's counsel shall certify to Defendant's counsel in writing that such has been done and that all health care providers have been identified and all medical records previously requested have been produced[.]
Mrs. Hepler insists that she could not comply with these directives because they require action to be taken prior to the day on which the order was entered (22 April 2004).
However, Conclusion of Law No. 4 in the written order corresponds to a verbal instruction given by Judge Spainhour at the 1 April 2004 hearing on Tindall's motion to compel. Specifically, at the hearing, Judge Spainhour clearly and unambiguously instructed Mrs. Hepler's attorney to produce the documents subsequently referenced in Conclusion of Law No. 4 "[w]ithin 20 days." Furthermore, paragraph four of the decretal portion of the written order merely requires production of documents and information that Mrs. Hepler already should have produced pursuant to previous orders entered by Judge Spainhour.
We are unpersuaded that the circumstances surrounding the filing of Judge Spainhour's 22 April 2004 order in any way excused Mrs. Hepler from complying with Judge Spainhour's prior rulings in open court and previously entered CMOs. See State v. Smith, 320 N.C. 404, 415-16, 358 S.E.2d 329, 335 (1987) (affirming order where the trial court "passed on each part of [a corresponding] motion ... in open court as it was argued and later reduced its ruling to writing, signed the order, and filed it with the clerk"); Danielson v. Cummings, 43 N.C.App. 546, 547-48, 259 S.E.2d 332, 333 (1979) ("The law is not so impractical as to require written notice of legal action to effectuate such action when the parties already have actual notice of the action taken from the proceedings in open court."), aff'd, 300 N.C. 175, 265 S.E.2d 161 (1980).
The corresponding assignments of error are overruled.
For the foregoing reasons, the order appealed from is
Affirmed.
Judges TIMMONS-GOODSON and TYSON concur.

As used in this opinion, the phrase "the Speed-way" refers to defendants Speedway Motor-sports, Inc., and Charlotte Motor Speedway, Inc., doing business as Lowe's Motor Speedway.