Kornegay v. Aspen Asset Group, L.L.C., 2007 NCBC 5

STATE OF NORTH CAROLINA　　　　　　IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
MECKLENBURG COUNTY　　　　　　　　　04 CVS 22242


| | | |
|---|---|---|
| TIMOTHY G. KORNEGAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASPEN ASSET GROUP, LLC, C. STEVE | ) | **ORDER** |
| CLARDY, MICHAEL CLARDY, CARLTON | ) | |
| S. CLARDY, JR., ROCKING B. FARMS, LLC, | ) | |
| BASIC ELECTRIC COMPANY, INC., and | ) | |
| EARTH PRODUCTS COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Bishop, Capitano & Moss, P.A. by J. Daniel Bishop and Joseph W. Moss, Jr. for Plaintiff Timothy G. Kornegay.*

*James, McElroy & Diehl, P.A., by John R. Buric and Gary S. Hemric for Defendants Aspen Asset Group, LLC, C. Steve Clardy, Michael Clardy, Carlton S. Clardy, Jr., Rocking B. Farms, LLC, Basic Electric Company, Inc., and Earth Products Company, LLC.*

Diaz, Judge.

{1}　The Court heard this matter on 26 February 2007 on the Defendants' Motion to Exclude Plaintiff's Untimely Designated Expert (the "Motion").

{2}　After considering the Court file, the written Motion, the Plaintiff's response, the Defendants' reply, and the arguments of counsel, the Court **DENIES** the Defendants' request that the Plaintiff's expert be excluded from testifying at trial, but will enter other sanctions against the Plaintiff for his untimely designation.

# I.

## FACTS[1]

### A.

### THE PARTIES

{3} Plaintiff Timothy Kornegay ("Kornegay") is a resident of Mecklenburg County, North Carolina. (Compl. ¶ 1.)

{4} The individual Defendants are all residents of Mecklenburg County, North Carolina. (Compl. ¶¶ 6-8.)

{5} Defendants Aspen Asset Group, LLC ("Aspen"), Rocking B. Farms, LLC ("Rocking B. Farms"), and Earth Products Company, LLC ("Earth Products") are limited liability companies organized under the laws of the State of North Carolina with their principal places of business in Mecklenburg County, North Carolina. (Compl. ¶¶ 2-3.)

{6} Defendant Basic Electric Company, Inc. ("Basic Electric") is a North Carolina corporation with its principal place of business in Union County, North Carolina. (Compl. ¶ 4.)

{7} Aspen is an investment holding company formed for the purpose of managing real estate investments. (Steve Clardy Aff. ¶ 2.)

{8} Basic Electric is an electrical contractor. (Steve Clardy Aff. ¶ 2.)

{9} Rocking B. Farms is a cattle and timber farm. (Steve Clardy Aff. ¶ 2.)

{10} Earth Products is in the business of dirt recycling. (Steve Clardy Aff. ¶ 2.)

{11} The Court will henceforth refer to Aspen, Basic Electric, Earth Products, and Rocking B. Farms collectively as the "Clardy Entities."

{12} At all relevant times, Defendant C. Steve Clardy served as Aspen's Chief Executive Officer. (Wilkinson Dep. 25:1-9.)

---

[1] The Court's recitation of the facts comes from the materials presented by the parties at summary judgment.

{13}    At all relevant times, Defendants Michael Clardy and Carlton S. Clardy, Jr., held ownership interests in or actively managed one or more of the Clardy Entities.  (Answer ¶¶ 6-8; Wilkinson Dep. 88:4-90:17.)

**B.**

**THE CLAIMS**

{14}    Kornegay filed his Verified Complaint on 14 December 2004 in Mecklenburg County Superior Court.  The Defendants answered the Complaint on 14 January 2005.

{15}    Kornegay alleges that he was hired to work for Aspen on or about 1 October 1996 and that he accepted the offer of employment based on Steve Clardy's promise that he would be paid $72,000 per year[2] plus: (1) an annual bonus in the amount of 20% of net profits on real estate investments that he originated and implemented, and (2) "fair compensation" for any real estate investments that he implemented, but did not originate.[3]  (Kornegay Aff. ¶¶ 4-5; Kornegay Dep. 21:8-28:16, 101.)

{16}    Kornegay was terminated on or about 16 July 2004.  (Compl. ¶ 18.)

{17}    From 1996 through his termination, Kornegay was paid $72,000 annually.  He received no additional compensation.  (Kornegay Dep. 33:11-15, 120:7-9.)

{18}    Kornegay alleges that his efforts in originating and implementing a number of real estate investments generated approximately $9.375 million in realized and unrealized profits for the Defendants.  (Kornegay Dep. 288:14-289:3.)

{19}    Pursuant to the alleged employment agreement, Kornegay seeks 20% of the net profits for at least three real estate investments that he claims to have originated and implemented, and

---

[2] According to Kornegay, the $72,000 sum consisted of a $50,000 base salary, with the balance being a draw against his expected bonus.  (Kornegay Dep. 22:23-27:6.)
[3] The Court dismissed Kornegay's claim for "fair compensation" at summary judgment.

that were sold during his term of employment. (Kornegay Dep. 101:21-102:4, 288:14-289:3; Michael Clardy Aff. ¶ 8.)

{20} Kornegay also seeks 20% of the net profits on other real estate investments that he claims to have originated and implemented, but which were not sold during his tenure.[4] (Kornegay Dep. 101:21-103:11.)

{21} Steve Clardy admits that Kornegay was hired, in part, to "initiate" or "find" real estate investments, but he insists that neither he nor Kornegay discussed specifically how the proposed bonus program would operate or how Kornegay's bonus would be calculated. (Kornegay Dep. 20:1-22:5, 57:4-58:3; Steve Clardy Aff. ¶ 4-5.) All Defendants deny that they owe Kornegay any additional compensation.

## C.

### THE DISCOVERY DISPUTE

{22} The parties took some discovery prior to the case being assigned to me. They did so pursuant to a scheduling order entered on 9 August 2005 by Senior Resident Superior Court Judge Robert P. Johnston, Jr. Among other things, the scheduling order set the case for trial on 20 March 2006 and directed Kornegay to identify his expert witnesses at least 180 days before the trial date. (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert Ex. B.)

{23} On 18 November 2005, Kornegay served his Designation of Expert Witness, identifying Jack Locke as an expert "expected to testify concerning the value of certain properties owned by or sold by [D]efendants." (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert Ex. C.)

{24} On 19 January 2006, the Chief Justice of the North Carolina Supreme Court designated this case as an exceptional matter and assigned it to me.

---

[4] As to this element of his damages, Kornegay alleges that he should recover 20% of the appraised value of each unsold property at the time of his termination, less some unspecified cost estimate. (Kornegay Dep. Ex. 12.)

4

{25}    As required by Rule 17.2 of the General Rules of Practice and Procedure for the North Carolina Business Court (the "Business Court Rules"), the parties filed a Joint Case Management Report (the "CMR") on 24 February 2006.  Therein, the parties stated that they did not intend to notice depositions until after the Court ruled on the Defendants' Motion for Summary Judgment, which the Defendants intended to file on or before 31 March 2006.  (CMR 1.)

{26}    According to the CMR, Kornegay anticipated taking no more than four additional depositions, including one expert deposition.  (CMR 1-2.)  The Defendants anticipated taking one expert deposition.  (CMR 2.)  The CMR did not address the sequence for taking depositions, other than to say that counsel would "cooperate and move expeditiously to schedule and complete depositions of appropriate persons."  (CMR 2.)

{27}    The parties also agreed in the CMR that the case was "well into the discovery phase of litigation."  (CMR 2.)  Accordingly, they requested that the Court enter an order providing (1) an additional 60 days following entry of the Court's order on the Defendants' Motion for Summary Judgment to complete depositions and to serve written discovery, and (2) that all responses to such written discovery be served within 30 days.  (CMR 1.)

{28}    The Defendants moved for summary judgment on 30 March 2006.

{29}    On 6 April 2006, the Court entered a Case Management Order (the "CMO").  The CMO did not specifically address the designation of expert witnesses or whether and how the parties would take expert depositions; instead, the Court adopted the parties' proposed deadline for completing discovery, as set forth in their joint report.  (CMO 4.)

{30}    In an Order entered on 26 September 2006, the Court granted the Defendants' Motion for Summary Judgment in part, dismissed some of Kornegay's claims, and left the balance of the Complaint for trial.

{31}   On 4 October 2006, the Defendants retained new counsel.

{32}   On 6 October 2006, Kornegay retained Bruce K. Tomlin ("Tomlin") as a potential expert witness with respect to the value of the disputed real estate investments. (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 2.)

{33}   On 13 November 2006, the Court extended the deadline for completing discovery and mediation to 11 January 2007. The Court granted relief pursuant to the parties' joint motion wherein they represented that they could not complete these tasks by the deadline in the CMO, despite their good-faith efforts. (Joint Motion to Extend Discovery and Mediation Deadlines 1.)

{34}   On 15 November 2006, Tomlin completed his appraisal reports. (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 2, 4.)

{35}   On 16 November 2006, the Court ordered that the case be called for trial on 23 April 2007.

{36}   On 8 January 2007, Kornegay took the depositions of Steve and Michael Clardy. (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 5.)

{37}   The parties mediated the case on 22 January 2007.[5] At the mediation, Kornegay for the first time disclosed Tomlin as a potential expert witness. Kornegay also tendered four appraisal reports prepared by Tomlin. (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 5.)

{38}   On 30 January 2007, the Defendants moved to exclude Tomlin's expected testimony at trial for Kornegay's failure (1) seasonably to supplement his original designation served 18 November 2005, and (2) to comply with the discovery deadline in the CMO.

---

[5] The Court notes with displeasure that the mediation took place 11 days after the deadline set forth in the modified CMO. At the hearing of this matter, the parties explained that the delay followed the substitution of the mediator, who needed additional time to schedule the mediation.

{39}    On 31 January 2007, the Court struck the Defendants' motion because the Defendants failed to certify that they had first attempted to negotiate a resolution of this discovery dispute, as required by Business Court Rule 18.6.

{40}    On 5 February 2007, the Defendants again moved to exclude Tomlin's testimony. While this new motion includes the required certification, it is not accompanied by a brief as required by Business Court Rule 15.2. This ordinarily would be grounds for denial of the requested relief, *see* Business Court Rule 15.11, but the Court, in its discretion, will address the merits of the Motion.[6]

{41}    On 19 February 2007, Kornegay filed his response to the Motion, and the Defendants filed their reply on 21 February 2007.

{42}    The Court heard oral arguments on the Motion on 26 February 2007.

## II.

## CONCLUSIONS OF LAW

## A.

## LEGAL STANDARD

{43}    Rule 37(b)(2) of the North Carolina Rules of Civil Procedure provides in pertinent part:

> If a party fails to obey an order to provide or permit discovery . . . a judge of the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> > a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

---

[6] To the extent that the Defendants' submission may be characterized as a brief, it violates Business Court Rule 15.8, requiring a certification that the brief complies with the word limitations set out therein. The Court suggests that the Defendants' lawyers read carefully this Court's rules, as future violations will result in sanctions.

b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

d. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders . . . .

N.C.G.S. § 1A-1, Rule 37(b)(2) (2006). Rule 37 also requires the party failing to obey the discovery order to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.*

## B.

## ANALYSIS

{44}  The Defendants make three principal arguments in support of their Motion. First, they assert that Kornegay failed seasonably to supplement his 18 November 2005 response to the Defendants' interrogatory seeking the identification of all experts, and the subject matter and substance of any such testimony. (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 6.) Second, the Defendants contend that Kornegay's 22 January 2007 expert disclosure violates the scheduling order entered in this case before it was assigned to the Business Court.[7] (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 7.) Third, the Defendants argue that Kornegay's disclosure was untimely under the CMO, as modified by the Court's 13 November 2006 Order. (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 7.)

---

[7] The Court rejects this argument without further discussion because the deadlines established in the CMO superseded the original scheduling order.

{45}   Kornegay's response is curious at best.  Rather than admit his error and plead for mercy, Kornegay beats his chest and portrays himself as the aggrieved party in this discovery melodrama.  Consistent with this tactic, Kornegay expends virtually all of his ink accusing the Defendants of, among other things, (1) substantially delaying the progress of post-summary judgment pretrial proceedings by the late substitution of new lawyers, (2) misleading the Court by distorting the various orders entered in the case, (3) whipsawing him, and (4) unfairly "jockeying" for procedural advantage.  (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 1.)

{46}   Frankly, Kornegay "doth protest too much."  William Shakespeare, Hamlet act 3, sc. 2.  Stripped of its histrionics, Kornegay's response contains little in the way of a persuasive explanation for his untimely expert designation.  Perhaps this is because, as the Court concludes, there is none.

{47}   Kornegay makes a half-hearted claim that he violated no order because the CMO did not contain an express deadline for expert disclosures.  (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 10.)  While this argument is literally correct, it defies common sense, not to mention the Court's general rules of practice.

{48}   In the first place, the original CMO plainly contemplated an outside window of 60 days from the date of entry of the Court's summary judgment order to complete **<u>all</u>** remaining discovery, plus an additional 30 days to respond to any discovery served within that window.  Second, the Business Court Rules make clear that "[d]iscovery with respect to experts, including expert depositions and **disclosure of expert information,** shall be conducted within the discovery period set forth in the Case Management Order."  Business Court Rule 18.5 (emphasis added).  Third, even assuming, as Kornegay argues, that the parties intended the Court's order granting a subsequent 45-day extension of time to apply to service of written discovery (and on

9

its face it does not), Kornegay missed this new deadline by 11 days. That delay alone would be sufficient to warrant exclusion of Kornegay's expert. *See In Re Pedestrian Walkway Failure,* 173 N.C. App. 254, 264-65, 618 S.E.2d 796, 803-04 (2005) (finding that trial court did not abuse its discretion in granting sanction of exclusion for a 14-day delay in designating expert witness).

{49} Nor did Kornegay honor his separate obligation seasonably to supplement his initial interrogatory response regarding expert disclosure. Rule 26(e)(1) of the North Carolina Rules of Civil Procedure provides that a "party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." N.C.G.S. § 1A-1, Rule 26(e)(1) (2006). "[T]he purpose and intent of Rule 26(e)(1) is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to requests for discovery." *Hill v. Williams,* 144 N.C. App. 45, 51, 547 S.E.2d 472, 476 (2001).

{50} In response to a specific interrogatory, Kornegay identified Jack Locke as his proposed expert on 18 November 2005. (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert Ex. C.) Yet, despite knowing as early as 6 October 2006 that he intended to use someone else and despite having the new expert's reports in hand no later than 15 November 2006, Kornegay remained silent for over two months before springing the disclosure on the Defendants on the date of the mediation. By any measure, Kornegay failed to comply with his duty seasonably to supplement his initial interrogatory response.

{51} Kornegay attempts to explain away his error by insisting that he "was entitled to test the Defendants' party witnesses' opinions of value of properties in issue without having them prepared or otherwise affected by the Plaintiff's expert's opinions [and that w]ithholding expert

disclosure until the first opportunity to complete those party witness depositions was not unreasonable delay." (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 10.) This audacious statement, however, ignores Kornegay's duty to comply with the Court's scheduling order and general rules of practice, even when it does not suit his litigation strategy. Put bluntly, when it comes to matters of case management and scheduling, a party is not entitled to anything unless and until the Court says so.

{52} Finally, Kornegay asserts that the Defendants' substitution of counsel and these new lawyers' bad-faith in scheduling discovery forced him to postpone the depositions of the Clardy Defendants for almost two months after the dates first proposed by Kornegay, which, in turn, "prompted a parallel delay in Plaintiff's disclosure of expert witness opinions." (Pl.'s Resp. to Defs.' Mot. to Exclude Expert Witness 1.)

{53} This argument fails on two counts. First, as noted earlier, Kornegay had no right to ignore the Court's scheduling order and rules to advance his litigation strategy. Second, the factual premise of the argument flies in the face of the parties' 8 November 2006 Joint Motion to Extend the Discovery and Mediation Deadlines, wherein Kornegay told the Court that the parties had been working in good faith to complete discovery. (Joint Mot. to Extend Disc. and Mediation Deadlines 1.)

{54} In sum, Kornegay has offered no good reason for his delay in designating his new expert; thus, the only question for the Court is the appropriate sanction under Rule 37 of the North Carolina Rules of Civil Procedure.

{55} Under Rule 37, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . a judge of the court in which the action is pending may make such orders in regard to the failure as

are just, and among others . . . an order . . . prohibiting [the disobedient party] from introducing designated matters in evidence . . . ."  N.C.G.S. § 1A-1, Rule 37(b)(2)(b) (2006).

{56}  "The choice of sanctions under Rule 37 is within the trial court's discretion . . . ." *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992).  At a minimum, however, the Court "shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  N.C.G.S. § 1A-1, Rule 37(b)(2) (2006).

{57}  The Defendants contend that the only proper sanction in this case is to strike Kornegay's untimely designation and exclude the expert's testimony at trial.  (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 8.)  This is particularly appropriate here, the Defendants say, because they cannot otherwise meet this new evidence in advance of the trial date.  (Defs.' Mot. to Exclude Pl.'s Untimely Designated Expert 8.)

{58}  The Defendants' argument is not without some merit, particularly given the inexcusable nature of Kornegay's misconduct and his less than contrite attitude.  Rule 37(b)(2) of the North Carolina Rules of Civil Procedure permits the Court to impose drastic sanctions for discovery violations, including dismissal of claims with prejudice, when it is "just" to do so.  *See Fulton v. East Carolina Trucks, Inc.,* 88 N.C. App. 274, 275-76, 362 S.E.2d 868, 869 (1987) (rejecting argument that dismissal of a case with prejudice for failure to comply with discovery is a last resort and is generally proper only where less drastic sanctions are unavailable).  On the other hand, when determining an appropriate sanction, the Court is cognizant that the general purpose of our Rules of Civil Procedure is "to encourage trial on the merits." *Am. Imports, Inc. v. G.E. Employees W. Region Fed. Credit Union,* 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978).

{59}    To Kornegay's credit, this appears to be his first discovery transgression in this case. And although the Defendants argue otherwise, exclusion of Kornegay's expert testimony would effectively scuttle his damages case. Faced with that possibility, Kornegay might well take a voluntary dismissal and re-file the action. *See* N.C.G.S. § 1A-1, Rule 41(a) (2006). Thus, the Court's reward for its trouble would be a second round of this already stale case.

{60}    After careful consideration, and in the exercise of my discretion, the Court declines to exclude Kornegay's expert. Instead, the Court will fashion a sanction that punishes Kornegay, provides the Defendants with an adequate remedy for the discovery violation, and allows this case to proceed to trial.

## SANCTION

{61}    Kornegay is **ORDERED** to make his expert available to the Defendants for deposition on ten (10) days' notice, on a date and time of the Defendants' choosing. Kornegay shall reimburse the Defendants for the costs of the deposition, including the reporter's fee and the cost of an expedited transcript, but not attorney's fees. Kornegay shall pay this amount within fifteen (15) days of the Defendants' service of an invoice or receipt reflecting the costs.

{62}    The Defendants shall be allowed up to and including 13 April 2007 to serve their expert designation (if any). Consistent with Rule 26(b)(4)(a)(1) of the North Carolina Rules of Civil Procedure, the Defendants' designation shall identify the expert by name, state the subject matter on which the expert is expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion. If the expert prepares one or more appraisal reports with respect to the properties at issue in this case, the Defendants shall provide copies to Kornegay. The Defendants shall also provide Kornegay

with the expert's *curriculum vitae*. Kornegay shall not be allowed to conduct any further discovery as to this expert.

{63}  Pursuant to Rule 37(b)(2) of the North Carolina Rules of Civil Procedure, Kornegay shall reimburse the Defendants for their attorney's fees and expenses in pursuing this Motion. Within ten (10) days of the entry of this Order, the Defendants shall file an affidavit of their fees and expenses. Kornegay shall file any response to the affidavit within ten (10) days of service. The Defendants shall file any reply within five (5) days of service of the response. Thereafter, the Court will enter an Order setting the award of fees and expenses. Kornegay shall pay this sanction within fifteen (15) days of the entry of the Court's award.

{64}  If Kornegay fails to comply with any part of this sanction, the Defendants may apply to the Court for further relief, including dismissal of the action with prejudice.

{65}  Finally, if the Defendants, despite their best efforts, are unable to meet Kornegay's expert evidence in advance of the 23 April 2007 trial date, the Court will entertain a motion to continue.


        **SO ORDERED**, this the 28th day of February, 2007.